**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:12-CV-00028-JHM-HBB**

| | |
|---|---|
| **WESTERN DIAMOND LLC** | **PLAINTIFF/ COUNTER-DEFENDANT** |
| V. | |
| **MALCOLM S. J. BARNES, et al.** | **DEFENDANTS/ COUNTER-PLAINTIFFS** |
| V. | |
| **PEABODY DEVELOPMENT COMPANY, LLC, et al.** | **COUNTERCLAIM DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Dismiss Defendants' Counterclaim [DN 23] and Peabody Development Company's Motion to Dismiss the Counterclaim [DN 46]. Fully briefed, these matters are ripe for decision. For the following reasons, Plaintiff's motion is **GRANTED** in part and **DENIED** in part. Peabody Development Company's motion is **GRANTED**.

**I. BACKGROUND**

On April 21, 1970, Dr. Malcolm L. Barnes and others conveyed certain mineral and mining rights to Peabody Coal Company ("Peabody") by a general warranty deed. (Compl. [DN 1] ¶ 8.) The deed, conveying over one hundred mineral acres in Ohio County, Kentucky, included the rights of "using the surface . . . for the purpose of mining any or all of said coal by the strip mining method." It also included the "usual, customary, and necessary rights . . . for the mining of said coal by the underground method, or any other method of mining said coal." (Deed from Barnes to Peabody, D.B. 188, Pg. 171, Office of Ohio Cnty. Clerk [DN 21-1].) At or around the same time that the deed was executed, Peabody drafted a letter to Dr. Barnes. This letter stated that it was intended to clarify the parties' agreement. (See Letter from Peabody to Barnes Dated Apr. 21, 1970 [DN 21-2].) The

letter limited the areas of land where Peabody would conduct its strip mining operations. It also put a time limit on them, stating that Peabody would conclude its strip mining operations within ten years. (Id.)

Thereafter, in 1978, Dr. Barnes passed away. His estate subsequently conveyed his interest in the surface property to Defendants Malcolm S. J. Barnes and Shirley Barnes. (Compl. [DN 1] ¶ 13.) After becoming the owners of the surface, Malcolm S. J. Barnes and Shirley Barnes mortgaged the land on multiple occasions and constructed barns, a residential home, and other structures on it. (Countercl. [DN 24] ¶ 14.) In 2009, they conveyed a portion of the property to Defendants Joseph H. R. Barnes and Carrie B. Barnes. (Id. ¶ 9.) Joseph H. R. Barnes and Carrie B. Barnes then took out a loan to construct a house on their portion of the property. (Id. ¶ 14.)

Meanwhile, Peabody conveyed its mineral rights in the property to Peabody Development in 1989. (Countercl. [DN 24] ¶ 11.) In 2005, Peabody Development then conveyed the same mineral rights to Central States Coal Reserves. (Id.) Thereafter, in 2006, Central States Coal Reserves and Beaver Dam Coal Company conveyed the same mineral rights to Plaintiff. (Id. ¶ 12.)

On February 12, 2012, Plaintiff filed this action for a declaratory judgment, requesting that the Court declare that Plaintiff was a bona fide purchaser for value without notice, thus having all of the mining rights that were originally conveyed to Peabody in 1970. (Compl. [DN 1] ¶ 22(a).) In this action, Plaintiff also requested a declaration from the Court that the letter from Peabody to Dr. Barnes was void as to Plaintiff, thus having no effect on Plaintiff's mining rights as described in the 1970 deed. (Id. ¶ 22(b).) On September 25, 2012, Defendants filed a counterclaim against Plaintiff alleging fraud. (See Countercl. [DN 24].) This counterclaim is at issue in this motion to dismiss.

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION OF PLAINTIFF'S MOTION TO DISMISS [DN 23]

Plaintiff has moved to dismiss Defendants' counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants assert the Court should not dismiss their counterclaim, as they have "specifically alleged fraud, collusion, equitable estoppel, and adverse possession." (See Mem. of Authority in Supp. of Defs./Countercl. Pls.' Resp. to Pl.'s Mot. to Dismiss Countercl. [DN 42-1] 5.) The Court considers each aspect of Defendants' counterclaim in turn.

### A. FRAUD

The basis for Defendants' fraud claim is difficult to discern. Nevertheless, it appears to the Court that Defendants' basic argument is that Plaintiff was aware that Defendants owned and lived

on the property's surface; Plaintiff represented to Defendants that they owned the surface without any form of restriction; and Defendants were thereby induced to mortgage their property and construct several improvements on it, all to their detriment. (See Counstercl. [DN 24] ¶¶ 15–16, 18–19.) For the following reasons, the Court finds that Defendants' fraud claim must be dismissed.

Under Kentucky law, an actionable claim of fraud requires: (1) a material misrepresentation; (2) which was false; (3) which was known to be false or made recklessly; (4) which was made with inducement to be acted upon; (5) which was acted in reliance upon; and (6) which caused injury. See United Parcel Serv. Co. v. Rickert, 996 S.W.2d 464, 468 (Ky. 1999). In the present case, Defendants claim that they have asserted an actionable claim for fraud because they have alleged that: Plaintiff made misrepresentations to Defendants that were false and known to be false; the misrepresentations were made to induce Defendants to act; and Defendants relied on the misrepresentations and would be injured if Plaintiff were to take control of the property's surface. (Counstercl. [DN 24] ¶¶ 14, 19.) As Plaintiff points out, however, Defendants do not assert plausible facts that would entitle them to recover for any alleged fraudulent action. (See Pl.'s Mem. in Supp. of its Mot. to Dismiss Counstercl. [DN 23-1] 2.) The Supreme Court has held that courts must dismiss claims under Fed. R. Civ. P. 12(b)(6) if a party simply offers "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 663. Here, that is precisely what Defendants have done. While it cannot be doubted that Defendants recited the elements of fraud in their counterclaim, (Counstercl. [DN 24] ¶¶ 14, 19), it is clear that they failed to offer sufficient facts in support thereof.

*False Material Misrepresentation.* The Court first finds that Defendants' fraud claim must be dismissed because they have failed to identify a single, specific false material misrepresentation of Plaintiff. In their Response, with respect to this issue, Defendants highlight their allegation that

4

Plaintiff acknowledged that Defendants were the owners of the surface property and that they had the right to use and occupy the surface without interference. (See Mem. of Authority [DN 42-1] 3–4.) While not clearly articulated, Defendants seem to argue that this is a false material misrepresentation since Plaintiff now asserts that it can strip mine the property's surface and, thus, restrictions exist regarding Plaintiff's use and occupancy. The Court finds, however, that Defendants cannot base their fraud claim on Plaintiff's acknowledgment of Defendants' surface ownership. As an initial matter, any such acknowledgment is a statement of truth–not falsity. Defendants do, in fact, own the surface of the property in question and have the right to do with it as they please. Thus, to the extent that Plaintiff represented that Defendants could use or occupy the surface without restriction, Plaintiff only represented the truth. Defendants do not allege that Plaintiff made any representations that would have led them to the conclusion that Plaintiff did not intend to exercise its mineral rights as to the property.

Along these same lines, the Court notes that Defendants failed to indicate any specific details about the alleged misrepresentations. Fraud allegations are subject to the mandates of Fed. R. Civ. P. 9(b). This rule states that "circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). In the present case, Defendants do not state the circumstances with particularity. They do not indicate which of Plaintiff's representatives made statements or to whom the statements were made. They also do not indicate where the statements were made or how the representations contained in them were false. The fact that Plaintiff requested permission to drill in no way suggests that it did not intend to exercise its mineral rights in the property. After all, it is necessary for mineral owners to communicate with surface owners because the estates are "inextricably intermingled." Akers v. Baldwin, 736 S.W.2d 294, 297 (Ky. 1987) (superseded by const.

amendment as noted in Ward v. Harding, 860 S.W.2d 280 (Ky. 1993)). Since Defendants have not provided sufficient details supporting their fraud allegation, they have not shown "that [they are] entitled to relief." Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the fraud claim cannot survive this motion to dismiss.

*Inducement.* Even if Defendants somehow adequately pled a false material misrepresentation, the Court finds that Defendants have not alleged facts suggesting that Plaintiff intended to deceive them. Kentucky law provides that the "intent to deceive is a necessary element of actionable fraud." Smith v. Barton, 266 S.W.2d 317, 318 (Ky. 1954). While it is true that Fed. R. Civ. P. 9(b) allows intent to "be alleged generally," it is also true that the term "'generally' is a relative term" and a party cannot simply "plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss." Iqbal, 556 U.S. at 687. Here, Defendants' counterclaim lacks sufficient factual allegations to support the contention that Plaintiff had the requisite intent. In this regard, the Court recognizes Defendants' assertion that they took out additional mortgages and constructed additional structures on their property in reliance on Plaintiff's statements. However, the Court finds that it is absurd to believe that Plaintiff wanted to deceive Defendants to cause them to mortgage their property or build additional structures on it. As Plaintiff accurately states, it simply had no motivation to do so. Because the counterclaim does not even create an inference that Plaintiff had the requisite intent to deceive Defendants, it cannot withstand this motion to dismiss.

*Reliance.* The Court also finds that the counterclaim is likely insufficient in its assertion of reliance. Kentucky courts have long suggested that "[t]he very essence of actionable fraud or deceit is the belief in and reliance upon the statements of the party who seeks to perpetrate the fraud." Wilson v. Henry, 340 S.W.2d 449, 451 (Ky. 1960). But in this case, reliance appears to be lacking.

Although Defendants reference mortgaging their property and constructing structures on it, their counterclaim makes it clear that some of the mortgages and construction were undertaken prior to Plaintiff's acquisition of the mineral rights in 2006. (See Countercl. [DN 24] ¶ 14.) While some of the mortgages and construction did come after Plaintiff's acquisition, it seems doubtful that those actions were taken in reliance on representations made by Plaintiff. After all, Defendants had already taken similar actions before Plaintiff's involvement, and Defendants assert that these actions were taken "in reliance upon the [letter] agreement [between Peabody and Dr. Barnes]." (Id.)

In sum, the Court finds that Defendants have seemingly overlooked the fact that they must plead more than conclusory allegations. Sixth Circuit law provides that Defendants, "at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of [Plaintiff]; and the injury resulting from the fraud.'" United States *ex rel* Bledsoe v. Cmty. Health Sys., Inc., 342 F.3d 634, 643 (6th Cir. 2003) (citation omitted). As discussed above, Defendants failed to do so. Thus, they failed to state their claim with sufficient particularity and Plaintiff's motion to dismiss must be **GRANTED** as to this issue.

### B. COLLUSION

In their counterclaim, Defendants assert that Plaintiff "actively and fraudulently colluded with Peabody Development, and/or Central States, and/or [Beaver Dam Coal Company] to deprive [them] of their property, homes, and the other improvements to their property without compensation . . . ." (Countercl. [DN 24] ¶ 21.) Plaintiff asserts that the Court must dismiss this claim under Fed. R. Civ. P. 12(b)(6). Again, the Court agrees with Plaintiff.

Kentucky courts have defined collusion as an "agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law." Conyers

v. Conyers, 224 S.W.2d 688, 689 (Ky. 1949) (citing Webster's New Int'l Dictionary). Collusion thus implies the existence of fraud of some kind, the employment of fraudulent means, or the employment of lawful means to accomplish an unlawful purpose. See AAA Installers v. Sears Holdings Corp., 764 F. Supp. 2d 931, 941–42 (S.D. Ohio 2011). It follows that a claim of collusion cannot survive without evidence of a fraudulent activity. In the present case, as discussed above, Defendants failed to sufficiently plead a factual basis to support their fraud claim. Thus, the Court finds that they have likewise failed to sufficiently plead a factual basis to support their collusion claim. Defendants' collusion claim must, therefore, be dismissed. Plaintiff's motion is **GRANTED** as to this issue.[1]

### C. ESTOPPEL AND ADVERSE POSSESSION

Defendants' counterclaim includes claims of equitable estoppel and adverse possession. (See Mem. of Authority [DN 42-1] 5.) Defendants assert that these claims support a finding that Plaintiff does not have the right to strip mine Defendants' property. (Countercl. [DN 24] ¶¶ 15, 17.) Plaintiff counters that the claims must be dismissed, as they are not free-standing and are, instead, affirmative defenses. (Pl./Counter-Def.'s Reply Mem. in Supp. of Mot. to Dismiss Countercl. [DN 45] 6.)

The Court finds that in some cases, equitable estoppel and adverse possession are raised as affirmative defenses. See, e.g., Owensboro Grain Co., LLC v. AUI Contracting, LLC, 2008 WL 5381914, at *5 (W.D. Ky. Dec. 18, 2008) (equitable estoppel); Vogler v. Salem Primitive Baptist Church, 415 S.W.2d 72, 74 (Ky. 1967) (adverse possession). In other cases, however, the claims are raised as free-standing claims. See, e.g., Fluke Corp. v. LeMaster, 306 S.W.3d 55, 62 (Ky. 2010)

---

[1] The Court notes that both parties suggest that the viability and plausibility of Defendants' claim for collusion is inherently intertwined with whether Defendants' fraud claim stands or falls. (See Pl.'s Mem. [DN 23-1] 11; Mem. of Authority [DN 42-1] 9.)

8

(equitable estoppel); Perkins v. Howard, 2013 WL 45570, at *4 (Ky. App. Jan. 4, 2013) (adverse possession). In this case, Defendants have asserted equitable estoppel and adverse possession both as affirmative defenses to defeat Plaintiff's claim, (see Answer [DN 14] ¶¶ 14, 16), and affirmative claims seeking relief. (See Countercl. [DN 24] ¶¶ 15, 22). Since they have asserted the claims in this latter regard, Plaintiff's motion to dismiss must be **DENIED** in part.

### IV. DISCUSSION OF PEABODY DEVELOPMENT COMPANY'S MOTION TO DISMISS [DN 46]

Peabody Development Company ("PDC") has moved to dismiss Defendants' counterclaim for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and the inability to join indispensable parties pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b). Defendants failed to respond to this motion within the allotted time period or move for an extension of time. Failure to respond to a motion to dismiss will be grounds for granting the motion. See Scott v. State of Tenn., 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) (affirming the district court's grant of an unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion"); Humphrey v. U.S. Attorney General's Office, 2008 WL 2080512, at *3 (6th Cir. 2008). Accordingly, given that Defendants failed to respond or otherwise oppose PDC's motion to dismiss, the Court deems Defendants to have waived opposition. Dismissal is thus warranted on this basis.

However, even if the Court examines the merits of Defendants' counterclaim as to PDC, the Court finds that dismissal is warranted under Fed. R. Civ. P. 12(b)(6). As a starting point, the Court finds that Defendants cannot establish that PDC breached any contract with Defendants. Under Kentucky law, the elements of a breach of contract action are: (1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to plaintiff. See Lenning v. Commercial Union

9

Ins. Co., 260 F.3d 574, 581 (6th Cir. 2001). To recover for a breach of contract, a party must "show the existence and the breach of a contractually imposed duty." Id. In their counterclaim, Defendants broadly state that "the actions of Peabody Development and/or its affiliates, Central States and BDCC, constitute breach of contract of the agreement with Defendants." (Countercl. [DN 24] ¶ 20.) However, the only "actions" on the part of PDC described in the counterclaim are that: (1) it received title from Peabody Coal in 1989; (2) it conveyed title to Central States Coal Reserves in 2005; and (3) it complied with the letter agreement between Peabody and Dr. Barnes since it did not undertake stripping operations on Defendants' property following the agreement's ten-year term. (Id. ¶¶ 11, 13, 17.) These actions, as a matter of law, cannot constitute breach. The Court additionally finds that Defendants' fraudulent collusion claim fails. As discussed above, Defendants failed to sufficiently plead a factual basis to support this claim.[2] Thus, PDC's motion to dismiss must be **GRANTED**.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendants' Counterclaim [DN 23] is **GRANTED** in part and **DENIED** in part. It is **GRANTED** as to Defendants' claims of fraud and collusion. It is **DENIED** as to Defendants' claims of equitable estoppel and adverse possession.

**IT IS FURTHER ORDERED** that Peabody Development Company's Motion to Dismiss Defendants' Counterclaim [DN 46] is **GRANTED**.

Joseph H. McKinley, Jr., Chief Judge
United States District Court

January 22, 2013

cc: counsel of record

---

[2] Because the Court finds that dismissal is warranted under Fed. R. Civ. P. 12(b)(6), it declines to consider PDC's argument that the counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(7) and 19(b) because it is not feasible to join indispensable parties.