UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12CV-28-JHM

WESTERN DIAMOND LLC,
a Nevada Limited liability company,                                    PLAINTIFF

VS.

MALCOLM S. J. BARNES, SHIRLEY
ANN BARNES, JOSEPH H. R. BARNES,
and CARRIE B. BARNES                                                   DEFENDANTS

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Western Diamond LLC's Motion for Summary Judgment [DN 62]. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

This case arises out a dispute over mining rights for a 400-acre piece of real property ("Barnes Property") located in Ohio, Kentucky. On April 21, 1970, Dr. Malcolm L. Barnes, Marshall Barnes, and Anne B. Barnes, conveyed by deed to Peabody Coal Company ("Peabody Deed") the coal and also the rights of "using the surface . . . for the purpose of mining any or all of said coal by the strip mining method, together with the rights and privileges to use so much of said surface as may be necessary . . . ." [Deed from Barnes to Peabody, DN 62-2, at 2]. On the same day, Peabody sent Dr. Barnes a letter ("Letter Agreement") "for the purpose of confirming and clarifying our agreement in regard to the exercise of the mining rights acquired by the deed of conveyance." [Letter Agreement, DN 66-3, at 2]. The Letter Agreement stated, among other things, that mining operations on the property would cease after ten years and that Peabody would compensate the Barnes family up to $10,000 for damage done to a silo located near the

mining operations. However, unlike the Peabody Deed, the Letter Agreement was never recorded.

In 1978, Defendants Malcolm S. J. Barnes and Shirley Barnes acquired title to the Barnes Property ("M. Barnes" and "S. Barnes"). Afterward, M. Barnes and S. Barnes mortgaged the land on multiple occasions and constructed barns, a residential home, and other structures on it. In 2009, M. Barnes and S. Barnes conveyed a portion of the property to Defendants Joseph H. R. Barnes and Carrie B. Barnes ("J. Barnes" and "C. Barnes"). J. Barnes and C. Barnes then took out a loan to construct a house on their portion of the property.

On September 19, 2006, Plaintiff Western Diamond, a real estate holding company for Armstrong Coal Company, acquired all the rights granted under the Peabody Deed from a large purchase of mining rights in Ohio County from Central States Coal Reserves of Kentucky, LLC ("CSCR") and Beaver Dam Coal Company ("BDCC").[1] In 2007 Armstrong hired Dennie Grider as a land manager in order to begin to review all the properties acquired by Western Diamond. After a brief examination of the Peabody Deed covering the Barnes's property and a discussion with David Cobb, Armstrong's Executive Vice President of Development, Grider contacted M. Barnes and S. Barnes in 2009 about the possibility of leasing or purchasing the Barnes Property. Although initial discussions between Grider and Defendants centered on leasing or purchasing terms, the parties ultimately agreed to allow Armstrong to drill on the property in order to determine what coal was actually available for mining. From April 2010 to October 2010, Armstrong drilled on the property, kept drill logs, and consulted with M. Barnes and J. Barnes. The parties never reached an agreement concerning the possibility of leasing or purchasing the Barnes Property even after completion of the drilling in October of 2010.

---

[1] Prior to the conveyance of the mining rights to Western Diamond, Peabody Coal had conveyed the property to Peabody Development Company in 1989 and Peabody Development had conveyed the deed to CSCR and BDCC in 2005.

Following the completion of drilling, Grider conducted more research into the deed between Peabody and Barnes, and he determined that the Peabody Deed would allow Armstrong Coal to mine without having to purchase or lease the property from the Defendants. He said that he came to this conclusion after consulting with a local attorney who checked the mineral title. Grider then contacted Defendants, which resulted in two subsequent meetings in late July and early August of 2011 about the meaning of the deed. During the course of the two meetings, Grider informed Defendants that Plaintiff retained surface mining rights based on the original Peabody deed. On August 18, 2011, Cobb sent M. Barnes a letter fully articulating Armstrong Coal's right to mine the property pursuant to the recorded Peabody Deed.

At some point in September of 2011, Cobb and Grider went to discuss with M. Barnes, S. Barnes, and J. Barnes the mining of the property. It is at this meeting that members of the Barnes family first produced the Letter Agreement to Cobb and Grider. The parties dispute whether Cobb or Grider knew about the existence of the Letter Agreement prior to that meeting. Cobb stated that he was unsure if he had ever seen the Letter Agreement, but he thought that he had previously heard about the document. According to Grider, he had never seen the Letter Agreement prior to meeting with Defendant in 2011, but he had a document in his possession that discussed a $10,000 damage cap for a silo on the Barnes Property.

On February 21, 2012, Plaintiff filed a complaint seeking declaratory judgment that it was a bona fide purchaser of the property without notice. Defendants answered Plaintiff's Complaint by raising affirmative defenses of estoppel and adverse possession. Additionally, Defendants filed a counterclaim asserting claims of fraud and collusion as well as claims of equitable estoppel and adverse possession. The Court dismissed the fraud and collusion claim

but determined the adverse possession and equitable estoppel claim could be maintained as free-standing claims.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## III. DISCUSSION

### A. Declaratory Judgment Action

In this action, Plaintiff Western Diamond asserts that at the time it purchased the Peabody Deed in 2006 from Central States Coal Reserves of Kentucky, LLC and Beaver Dam Coal Company it was bona fide purchaser without notice. Specifically, Plaintiff disclaims any notice of the Letter Agreement when CSCR and BDCC conveyed the Peabody Deed to it in 2006. In contrast, Defendants assert that statements by Grider and Cobb during the meetings in 2011 indicated that they not only were aware of the Letter Agreement but also they possessed of a copy of the document.

In the present case, the fundamental issue in dispute is whether Plaintiff Western Diamond is subject to the terms contained in the Letter Agreement under Kentucky property law. The relevant recording statute in this action provides as follows:

> No deed conveying any title to or interest in real property, or lease of oil, gas, coal or mineral right and privilege, for a longer time than five (5) years . . . shall be good against a purchaser for a valuable consideration without notice thereof . . . unless the deed is acknowledged by the party who executes it, or is proved and lodged for record in the proper office, as prescribed by law.

KRS § 382.080(1). The parties do not dispute that Plaintiff would be considered a purchaser for value under the statute, but each side contests whether Plaintiff had "notice" of the Letter Agreement at the time CSCR and BDCC conveyed the Peabody Deed to it in 2006. As the statute indicates, a recorded instrument places a subsequent purchaser of real property for value on notice of all documents in the chain of title. KRS § 382.080; Blackburn v. Piney Oil & Gas Co., 278 Ky. 191, 128 S.W.2d 192, 195 (Ky. 1939). A subsequent purchaser may also be put on notice by actual knowledge of a prior interest or purchase at the time it executes the deed. Gillig v. Stofer, 279 Ky. 349, 130 S.W.2d 762, 762 (Ky. 1939). Actual notice under KRS § 382.080 has been broadly interpreted by the Kentucky Supreme Court to "mean without actual

5

knowledge of the existence of [an instrument], either unrecorded or improperly recorded, or knowledge of such facts as would lead a reasonably prudent person under like circumstances to inquire into the matter and discover the existence of that [instrument]." State Street Bank & Trust Co. of Boston v. Heck's Inc., 963 S.W.2d 626, 630 (Ky. 1998) (citing Cox v. Guaranty Bank & Trust Co., 199 Ky. 115, 250 S.W. 804 (1923)).

While the parties agree on the controlling statute and appropriate type of notice in question in this case, they dispute which party has the burden of demonstrating the "bona fide purchaser without notice" status. Defendants argue that "the burden [is] upon [the purchaser] to establish by proof that his purchase was without notice, actual or constructive, of [purchaser's] outstanding superior title, and there is a total failure of proof that he did not have actual notice." Ashurst v. Cooper's Administrators, 291 S.W. 730, 733 (Ky. 1927). However, Plaintiff contends "there is a presumption that a subsequent purchaser who buys the property and pays for it has no notice of an infirmity in the title; and unless there is *substantial proof* of facts which would put a reasonable man on notice, the subsequent purchaser has the better right." McKinney v. Fox, 305 Ky. 659, 661, 205 S.W.2d 315, 316 (1947) (emphasis added) (citing Terry v. Ellsworth, 236 Ky. 54, 32 S.W.2d 558 (Ky. 1930)); see also Terry v. Ellsworth, 236 Ky. 54, 32 S.W.2d 558 (Ky. 1930) ("Where an owner neglects to record his title, every presumption is in favor of a subsequent purchaser, and vague and indefinite recitals are not sufficient notice to put him on inquiry outside the record.") (citations omitted).

As to the question of which party bears the burden, the parties have both accurately identified cases that support their relative positions. Unfortunately, Kentucky courts have created multiple approaches to this issue. See generally M. C. Dransfield, Annotation, *Presumption and Burden of Proof as Regards Good Faith and Consideration on Part of*

*Purchaser or One Taking Encumbrancer Subsequent to Unrecorded Conveyance or Encumbrance*, 107 A.L.R. 502 (Originally published in 1937) (identifying cases that follow various approaches to the issue of which party carries the burden in disputing "bona fide purchaser" status). Moreover, the problem is compounded by the fact that neither approach relied on by the parties has emerged as the prevailing view in Kentucky. On one hand, courts have cited to McKinney more recently as to the burden being on the party challenging a subsequent bona fide purchaser. See Godley v. Kentucky Resources Corp., 640 F.2d 831, 835 (6th Cir. 1981); Hull v. Citifinancial Services, Inc., 2013 WL 462355, *2 (Ky. Ct. App. Feb. 8, 2013). On the other hand, the position that the burden is on the subsequent purchaser has been stated more often but not in any recent decision. See, e.g., Rouse v. Craig Realty Co., 203 Ky. 697, 262 S.W. 1083, 1084 (Ky. 1924) ("[W]here the last purchaser is seeking affirmative relief, the burden is upon him to plead and prove the bona fides of the transaction.").

Even though Kentucky appears to be split on the issue regarding which party carries the burden, the Court adopts the approach taken in McKinney, which is that once a subsequent purchaser establishes he purchased the property for value, the burden shifts to the challenging party to demonstrate that he did so with notice of a prior interest. The burden shifting approach appears to be more appropriate for three main reasons. First, unlike Ashurst and Rouse, McKinney has been cited by both the Sixth Circuit and by the Kentucky Court of Appeals relatively recently. Second, if the burden were placed upon the subsequent purchaser to prove that he or she was without notice, it would require that party to engage in proving a negative. Finally, the burden being placed on the holder of the unrecorded instrument to prove notice finds some support in the controlling case on notice in State Street. In State Street, the Kentucky Supreme Court, in examining the notice given to a subsequent mortgage holder, determined

"there was *prima facie* proof that [the subsequent mortgagee] had both actual and inquiry notice of [the equitable mortgagee]." Id. at 630. The court then turned to the subsequent mortgage holder to determine whether the party could rebut the evidence supporting notice. Id. While State Street neither mentions McKinney nor explicitly states that the burden should be upon the challenging party to prove notice, the *prima facie* burden-shifting language strongly suggests that the Kentucky Supreme Court would adopt the approach from McKinney. For those reasons, the Court will examine the factual allegations in this case under the burden-shifting approach and within the context of summary judgment.

Based on the arguments and the proper legal standard, the only relevant issue is whether Plaintiff at the time of the acquisition of the Peabody Deed in 2006 had notice of the Letter Agreement. Plaintiff, the moving party in this action, must demonstrate an absence of a genuine issue of material fact. Plaintiff argues that Defendants cannot identify any statement or document to suggest the existence of notice concerning the Letter Agreement when Western Diamond acquired the Peabody Deed in 2006. In response, Defendants allege that statements by Grider and Cobb evidence notice of or possession of the Letter Agreement prior to the meetings in 2011. To support this proposition, Defendants refer to the deposition testimony from Grider in which he indicated that he had seen a document somewhere that referenced a $10,000 damage provision for the silo in his records and mentioned that the provision during a meeting with the Barnes family in 2011. The relevant testimony is as follows:

> Q    Now, do you recall discussing with the Barneses that you had seen something about a $10,000 damage limitation to the silo if it was damaged during the mining process?
>
> A    I think that was one of the agreements that I had found in the record, yes, sir.

8

Q      And do you know what agreement that was that you found in the record? Can you lay hands on that agreement?

…

A      Not right now. I don't' have it here with me, but I think I've got it in the file, my file at Centertown.

[Grider Dep., DN 66-7, at 42]. However, contrary to what is suggested by his answer concerning the damage provision, Grider also stated in the deposition that he had never seen the Letter Agreement prior to the meeting in 2011. In addition to Grider's statements, Defendants provide deposition testimony from members of the Barnes family in which they remember that Cobb stated during the September 2011 meeting that he had previously seen the Letter Agreement. Specifically, M. Barnes, S. Barnes, and J. Barnes all testified to Cobb stating during the meeting in September of 2011 that he had seen the Letter Agreement previously. Additionally, J. Barnes remembered Cobb stating that he had received the letter from Peabody although this was not corroborated by either M. Barnes or S. Barnes. When asked about the Letter Agreement, Cobb said that he was not sure when he first saw the agreement.

The evidence presented by Defendants creates enough of a factual basis to suggest that Plaintiff had actual notice of the Letter Agreement when it acquired the Peabody Deed in 2006. The Court comes to this conclusion for the following reasons. First, the Court finds it significant that Grider initially approached the Defendants with an offer to lease or purchase the property. That fact suggests that Grider was aware of the Letter Agreement. Second, statements by the Barnes family indicate that not only was Grider aware of the Letter agreement but also he had possibly received a copy of the letter from Peabody. When asked about the Letter Agreement in a deposition, Cobb even stated that he believed that he had at least heard of the agreement before meeting with the Barnes, but he could not remember from whom, when, or where he had

9

obtained information about the Letter Agreement. Third, from the date of the Peabody Deed until the summer of 2009, no activity relative to the Barnes' farm was undertaken which was contrary to the terms of the Letter Agreement. This is enough to make out a *prima facie* case of notice.

Under the burden shifting framework utilized in <u>State Street</u>, the Plaintiff can rebut Defendants' factual assertions. However, the Plaintiff cannot produce a single officer or employee that can be deposed to answer questions concerning the acquisition of the Peabody Deed. This is particularly disconcerting in light of the sparse responses Plaintiff provided to Defendants during the discovery process concerning knowledge of the Letter Agreement. In fact, the Court struggles to believe the only two individuals that Plaintiff can produce in this action to answer questions on its behalf are employees of a company that is not a party to this action. Furthermore, Plaintiff has never been able to explain how or when it came into possession of the Letter Agreement.

Based on these facts, the Court believes that a jury could find that Plaintiff had notice of the Letter Agreement when it acquired the Peabody Deed in 2006. Therefore, the Court finds genuine issues of material fact sufficient to deny summary judgment to Plaintiff.

### B. Adverse Possession

Defendants in their response to summary judgment opted to abandon their claim under adverse possession. The Court will not address this issue any further.

### C. Equitable Estoppel

Plaintiff seeks summary judgment on Defendants' claim for equitable estoppel, raised both as an affirmative defense in Defendants' Answer as well as a free standing claim in their Counterclaim. Plaintiff contends that Defendants fail to assert facts that would support a claim

of equitable estoppel. As the moving party in this motion, Plaintiff must demonstrate the absence of a genuine issue of material fact as to Defendants' claim. The Court will discuss Defendants' equitable estoppel theory as a singular theory even though Defendants raised it as an affirmative defense and as a claim in their Counterclaim since the facts and law are identical.

> To prevail on a claim for equitable estoppel, a party must show:
>
> (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

Fluke Corp. v. LeMaster, 306 S.W.3d 55, 62 (Ky. 2010) (citing Sebastian-Voor Properties, LLC v. Lexington-Fayette Urban County Government, 265 S.W.3d 190, 194-95 (Ky. 2008). "It is well-established that the reliance necessary to establish a claim of equitable estoppal [*sic*] must be reasonable." Aculty v. Great West Cas. Co., 2005 WL 3488359, 2 (Ky. Ct. App. Dec. 22, 2005) (citing Gailor v. Alsabi, 990 S.W.2d 597 (Ky. 1999)). See also Whittinghill v. Prudential Property and Cas. Co., 2005 WL 3591989, *2 (W.D. Ky. Dec.29, 2005) ("Equitable estoppel may be invoked by an innocent party who has been fraudulently induced to change his position in reasonable reliance on an otherwise unenforceable oral agreement.").

Defendants attempt to frame their argument for equitable estoppel in the same factual manner as they did in contesting Plaintiff's bona fide purchaser status. Defendants suggest "Grider wrongfully and fraudulently held out the prospect of purchasing the Barnes property, or leasing the same in order to gain access to the property and to drill it for the quantity and location

of coal seams under the property." [Defs.' Mem., DN 66-1, at 21]. In order to take this position, Defendants must accept one of two logically flawed syllogisms. First, if Defendants believe that Plaintiff had the Letter Agreement during the discussions of leasing or purchasing the property and Defendants thought that to be the case at the time (as they have argued the whole time), Defendants and Plaintiff would have had the exact same information about the Barnes Property, and thus, neither party could have misrepresented or concealed facts to the other. Second, if the Defendants choose to argue that Plaintiff did not have possession or knowledge of the Letter Agreement, this would not only eliminate their claim for equitable estoppel but also undermine their position on Plaintiff's summary judgment argument. Under these facts, either scenario leaves Defendants without a viable claim for equitable estoppel.

Even assuming that a concealment of material facts existed in this case, Defendants cannot demonstrate that they acted in reliance. Defendants assert that "improvements were undertaken and completed in reliance on and with the believed assurance from Western Diamond that if mining was conducted, it would be pursuant to a lease and would not include the areas where substantial improvements had recently been completed." [Defs.' Mem., DN 66-1, at 22]. However, the facts indicate that not only were mortgages taken out before Plaintiff approached Defendants about the possibility of mining on their property but also many of the improvements were made prior to any drilling.[3] Of course, any action taken before the discussions about purchasing or leasing the property cannot support a theory of reliance because that is temporally impossible. Additionally, the actions taken during and after the drilling seem to be consistent with those taken prior to the drilling. This finding as to reliance for Defendants' estoppel claim

---

[3] "Joe Barnes and Carrie Barnes acquired a portion of the farm from his parents, mortgage the property, and began and completed construction of his home both *before* and throughout the time that Western Diamond was drilling on the Barnes farm." [Defs. Mem., DN 66-1, at 22] (emphasis added).

12

mirrors the Court's previous holding on Defendants' fraud claim. As to reliance on the fraud claim, the Court concluded as follows:

> In this regard, the Court recognizes Defendants' assertion that they took out additional mortgages and constructed additional structures on their property in reliance on Plaintiff's statements. However, the Court finds that it is absurd to believe that Plaintiff wanted to deceive Defendants to cause them to mortgage their property or build additional structures on it. As Plaintiff accurately states, it simply had no motivation to do so.

[Mem. Op. & Order, DN 53, at 6]. Defendants have failed to assert additional facts to cause the Court to depart from its previous holding as to reliance.

For the following reasons, Defendants claim and affirmative defense of estoppel are dismissed.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff Western Diamond's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part** [DN 62]. It is **GRANTED** with respect to the dismissal of Defendants' affirmative defenses and claims of equitable estoppel and adverse possession; it is **DENIED** as to Plaintiff's declaratory judgment.

*[signature]*

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

January 28, 2014

13